**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Ana Cabrera, Administrator of the Estate of Arturo Roberto Wright, *Estate Pending* | : CIVIL ACTION<br>:<br>: TRIAL BY JURY DEMANDED<br>: NO. _____<br>: |
|      Plaintiff, | :<br>: |
|   v. | :<br>: |
| Lehigh County<br>17 South 7th Street<br>Allentown, PA 18101 | :<br>:<br>:<br>: |
| PrimeCare Medical, Inc.<br>1500 Fulling Mill Road, Suite 1000<br>Middletown, PA 17057 | :<br>:<br>:<br>: |
| Corrections Officer John Doe<br>38 North Fourth Street<br>Allentown, PA 18102 | :<br>:<br>:<br>: |
| Medical Provider John Doe<br>38 North Fourth Street<br>Allentown, PA 18102 | :<br>:<br>:<br>: |
|     Defendants. | :<br>: |

**COMPLAINT**

Plaintiff, Ana Cabrera, Administrator of the Estate of Arturo Roberto Wright, *Estate Pending,* by and through her attorneys, Brian J. Zeiger, Esquire, and Laura Zipin, Esquire, hereby alleges the following:

**JURISDICTION & VENUE**

1. Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 and related state law claims, and this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. The acts and omissions giving rise to this action occurred in Lehigh County, Pennsylvania, which lies within the Eastern District of Pennsylvania; accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b).

3. Defendant PrimeCare Medical, Inc. maintains its principal place of business in the Commonwealth of Pennsylvania and provides medical services at correctional facilities within the Eastern District of Pennsylvania; accordingly, venue is also proper as to PrimeCare pursuant to 28 U.S.C. § 1391(c)(2) and (d).

## PARTIES

4. Plaintiff Ana Cabrera will be the Administrator of the Estate of Arturo Roberto Wright, deceased ("Mr. Wright" or "Decedent"), although the *estate is currently pending*.

5. Defendant Lehigh County ("Lehigh County") is a municipal entity organized and existing under the laws of the Commonwealth of Pennsylvania that owns, operates, controls, and promulgates the policies, customs, and practices governing the Lehigh County Jail ("LCJ"), located at 38 North Fourth Street, Allentown, PA 18102, with administrative offices at the Lehigh County Government Center, 17 South 7th Street, Allentown, PA 18101. At all relevant times, Lehigh County was responsible for the care, custody, control, safekeeping, and protection of inmates and detainees confined at LCJ, including Mr. Wright.

6. Defendant PrimeCare Medical, Inc. ("PrimeCare") is a private corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1500 Fulling Mill Road, Suite 1000, Middletown, PA 17057. At all relevant times, PrimeCare was a private subcontractor of Defendant Lehigh County, contracted to provide comprehensive medical, dental, medication-assisted treatment, and mental health services to inmates and detainees at LCJ, including Mr. Wright. PrimeCare's actions and inactions were taken under color of state law.

7. Defendant Corrections Officer John Doe is an adult individual who, at all relevant times, was employed by Lehigh County at LCJ and was responsible for the supervision, monitoring, safekeeping, and protection of inmates and detainees, including Mr. Wright.

2

All of this Defendant's actions or inactions were taken under color of state law. This Defendant is sued in his or her individual capacity. The true identity of this Defendant is presently unknown to Plaintiff and will be substituted by amendment once ascertained through discovery.

8. Defendant Medical Provider John Doe is an adult individual who, at all relevant times, was employed by or acted as an agent of PrimeCare at LCJ and was responsible for providing medical and/or mental health care to inmates and detainees, including Mr. Wright. All of this Defendant's actions or inactions were taken under color of state law. This Defendant is sued in his or her individual capacity. The true identity of this Defendant is presently unknown to Plaintiff and will be substituted by amendment once ascertained through discovery.

## FACTUAL BACKGROUND

9. Plaintiff re-alleges each and every averment set forth previously as if the same were set forth here in full.

### *Facts Specific to Decedent*

10. At all relevant times, Mr. Wright was confined as an inmate in the custody of Lehigh County at LCJ.

11. Mr. Wright was arrested on or about August 23 and August 24, 2024, by the Allentown Police Department on charges including felony strangulation, simple assault, harassment, and terroristic threats. A Lehigh County judge set bail at $50,000 in one case and $20,000 in a second case. Mr. Wright did not post bail.

12. Mr. Wright was admitted to LCJ as a pretrial detainee on or about August 25, 2024.

13. At all relevant times, Mr. Wright faced a substantial and known risk of serious harm while in the custody of Lehigh County. Specifically, he had a known and documented risk of suicide or self-harm, a known mental health condition, intoxication or withdrawal requiring monitoring, and intake screening results indicating suicide risk; he had also made statements to staff that indicated these risks.

14. Prior to August 27, 2024, the Defendants knew or should have known of the substantial risk of serious harm to Mr. Wright due to intake screening results, prior incidents, Mr. Wright's own statements or requests for help, observations of his condition, warnings from family or other inmates, and placement on or removal from a watch protocol.

15. Despite their knowledge of the substantial risk of serious harm, Defendants failed to take reasonable measures to protect Mr. Wright. The inadequacy of their preventative measures was demonstrated by their failure to conduct required cell checks or rounds, their failure to place Mr. Wright on appropriate observation or watch status, their failure to remove dangerous items from his cell, their failure to provide timely medical or mental health evaluation and treatment, and their failure to communicate the known risk among corrections and medical staff and across shifts.

16. On Tuesday, August 27, 2024, at approximately 2:12 p.m., LCJ staff found Mr. Wright unresponsive in his cell.

17. When Mr. Wright was discovered, no one had checked his cell for a long time.

18. LCJ staff administered CPR and declared a medical emergency. Mr. Wright was transported by ambulance from LCJ to St. Luke's Hospital, Allentown Campus.

19. Mr. Wright was pronounced dead at St. Luke's Hospital at approximately 2:50 p.m. on August 27, 2024.

20. The Lehigh County Coroner, Daniel Buglio, ruled Mr. Wright's manner of death a suicide.

21. The harm that befell Mr. Wright was the very harm from which Defendants were obligated to protect him, and it was reasonably foreseeable in light of the risk described above.

22. Mr. Wright had been in the custody of Lehigh County for approximately two days before he died. During that brief period, Defendants failed to adequately screen, monitor, observe, and protect him from the substantial risk of serious harm that led to his death.

23. As a direct and proximate result of Defendants' acts and omissions, Mr. Wright suffered conscious pain and suffering, emotional distress, fear, physical injuries, and death.

4

24. Moreover, as a direct and proximate result of the Defendants' acts and omissions, Mr. Wright's family suffered mental anguish and the loss of his companionship, comfort, society, financial support, and guidance.

***Facts Specific to the Medical and Mental Health Care Provided to Decedent***

25. At all relevant times during his confinement at LCJ, Mr. Wright was a patient under the medical and mental health care of Defendant PrimeCare and its physicians, nurses, mental health professionals, employees, and agents, including Defendant Medical Provider John Doe, who was responsible for rendering medical and mental health treatment to him.

26. By undertaking to provide medical and mental health care to Mr. Wright, Defendant PrimeCare and its medical and mental health providers, including Defendant Medical Provider John Doe, established a healthcare provider–patient relationship with Mr. Wright and owed him a duty to exercise the degree of skill, knowledge, care, and diligence ordinarily possessed and employed by reasonably competent medical and mental health professionals under like circumstances.

27. The medical and mental health providers of Defendant PrimeCare, including Defendant Medical Provider John Doe, deviated from the accepted standard of care in their treatment of Mr. Wright, including by failing to perform an adequate intake medical and mental health assessment; failing to recognize, document, and respond to his known and obvious risk of suicide or self-harm, his mental health condition, and his signs of intoxication or withdrawal; failing to order, implement, and maintain appropriate suicide precautions, observation levels, and a treatment plan; failing to prescribe, administer, and monitor appropriate medication; and failing to ensure adequate communication, continuity, and follow-up of his care.

28. These deviations from the accepted standard of care increased the risk of harm to Mr. Wright and were a direct and proximate cause of his conscious pain and suffering, injuries, and death.

*Facts Specific to Prior In-Custody Deaths at LCJ and Notice to Defendants*

29. The death of Mr. Wright was not an isolated event. LCJ has experienced a pattern of inmate suicides demonstrating Defendants' longstanding failure to adequately protect inmates and detainees from self-harm.

30. On or about November 30, 2022, Cheryl Phillips, an inmate at LCJ, attempted suicide by throwing herself off the second tier of the prison, landing on a concrete floor. She died days later from blunt-force head injuries. Ms. Phillips had been denied her medically prescribed Methadone, had detox forced upon her despite being a known suicide risk, and had been removed from psychiatric observation despite a history of suicidal ideation. The Estate of Cheryl Phillips subsequently filed a lawsuit against Lehigh County and PrimeCare Medical, Inc. alleging failure to protect and deliberate indifference to her serious medical and mental health needs.

31. On or about January 11, 2025, approximately five months after Mr. Wright's death, Joshua D. Moser, 34, was found alone and unresponsive in a single cell at LCJ. LCJ staff attempted life-saving measures, and Mr. Moser was transported to St. Luke's Hospital in Allentown, where he was pronounced dead. The Lehigh County Coroner ruled his death a suicide.

32. On or about March 13, 2025, approximately seven months after Mr. Wright's death, Forest Touchberry, 31, was found unresponsive in his cell at LCJ, where he was housed alone. LCJ staff declared a medical emergency at approximately 2:45 p.m. Mr. Touchberry was transported to St. Luke's Hospital, Sacred Heart Campus, where he was pronounced dead at 3:29 p.m. The Lehigh County Coroner ruled his death a suicide. Mr. Touchberry had been incarcerated at LCJ for approximately one week.

33. On or about June 22, 2026, Kevin M. Esterly, 53, was found unresponsive in a single cell at LCJ, hanging by a bedsheet tied to his top bed bunk. He was pronounced dead at a local hospital. The Lehigh County Coroner ruled his death a suicide.

34. In connection with the renewal of PrimeCare's contract in the summer of 2025, Lehigh County Commissioner April Riddick publicly stated she could not vote in favor of the contract because, in her words, "We've had three suicides under their watch." The Lehigh County Board of Commissioners tabled the vote to demand stronger oversight and

6

reporting language from PrimeCare, acknowledging the need for improved mental health services within the jail. *See* https://www.lehighvalleypublicmedia.org/news/local/lehigh-county-reaches-deal-with-medical-company-for-care-for-inmates/.

35. In addition, in or about 2023, a separate lawsuit was filed against Lehigh County, LCJ Director of Corrections Janine Donate, and PrimeCare, alleging that a woman with bipolar disorder was held in isolation at LCJ, causing her mental health to deteriorate, and that PrimeCare failed to provide adequate mental health treatment. *See* https://www.wfmz.com/news/area/lehighvalley/lawsuit-woman-with-mental-health-issues-kept-in-isolation-at-lehigh-county-jail/article_a0aab688-f99b-11ed-9fae-631a184519ad.html.

36. Upon information and belief, PrimeCare has been the subject of numerous lawsuits, settlements, and adverse findings arising from its failure to provide adequate medical and mental health care to inmates and detainees at county correctional facilities across Pennsylvania, including but not limited to lawsuits involving inmate suicides and deaths at facilities served by PrimeCare.

### *Facts Specific to Policies, Customs, and Practices of Defendants Lehigh County and PrimeCare*

37. Defendants Lehigh County and PrimeCare knew or should have known of the institutional deficiencies in the care and services they provided to inmates and detainees at LCJ, for whose care they were charged.

38. At all relevant times, Defendant Lehigh County operated LCJ and contracted with Defendant PrimeCare to provide medical, mental health, and related services to the inmate and detainee population.

39. According to the Bureau of Justice Statistics, suicide has been among the leading causes of death in local jails for more than two decades.

40. Despite this well-known risk and the pattern of suicides and litigation described above, Defendants Lehigh County and PrimeCare failed to implement and enforce adequate policies, protocols, and training to detect, monitor, and safeguard inmates and detainees at risk of suicide or self-harm.

41. Specifically, Defendants Lehigh County and PrimeCare maintained the following deficient policies, customs, and practices, which were the moving force behind the violation of Mr. Wright's constitutional rights:

42. Failing to conduct adequate intake mental health screenings and assessments for new inmates and detainees;

43. Failing to conduct adequate and timely cell checks and rounds on inmates and detainees identified as at risk of suicide or self-harm;

44. Failing to place inmates and detainees at risk of suicide or self-harm on appropriate observation or watch status, and prematurely discontinuing such observation;

45. Failing to ensure that dangerous items, including items capable of being used as a ligature, were removed from cells housing at-risk inmates and detainees;

46. Failing to adequately staff LCJ with qualified mental health professionals, including psychiatrists and psychologists;

47. Failing to communicate known risk factors for suicide and self-harm among corrections officers, medical staff, and mental health providers and across shifts;

48. Failing to train, supervise, and discipline corrections officers and medical and mental health staff in the identification and protection of inmates and detainees at risk of suicide or self-harm;

49. Failing to monitor and enforce compliance with the jail's own suicide prevention policies and protocols; and

50. Maintaining a policy and practice of housing inmates and detainees at risk of suicide or self-harm alone in single cells without adequate monitoring or suicide-resistant fixtures.

51. Defendants Lehigh County and PrimeCare were on notice of the deficiencies in their policies, customs, and practices by reason of the deaths of Cheryl Phillips, Joshua Moser, and Forest Touchberry; the lawsuits filed against them; public commentary by the Lehigh County Coroner, County Commissioners, and community advocates; and the well-

established body of correctional best practices and national standards regarding suicide prevention in custodial settings.

52. Despite this notice, Defendants Lehigh County and PrimeCare failed to take corrective action and were deliberately indifferent to the known and obvious consequences of their policies, customs, practices, and failures to train and supervise.

## COUNT I

**FAILURE TO PROTECT – DELIBERATE INDIFFERENCE
FOURTEENTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983
PLAINTIFF v. DEFENDANTS CORRECTIONS OFFICER JOHN DOE, MEDICAL
PROVIDER JOHN DOE, AND PRIMECARE**

53. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

54. While in the custody of Lehigh County, Mr. Wright was incarcerated under conditions posing a substantial risk of serious harm to his health and safety.

55. Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Mr. Wright existed, and they drew that inference.

56. Despite their actual knowledge of the substantial risk of serious harm, Defendants failed to take reasonable measures available to them to abate that risk and to protect Mr. Wright.

57. Defendants acted deliberately, recklessly, and with conscious and deliberate indifference to the obvious risk that Mr. Wright would suffer serious harm and death.

58. The acts and omissions of Defendants served no legitimate penological purpose.

59. As a direct and proximate result of the individual Defendants' deliberate indifference and failure to protect, Mr. Wright suffered emotional injury, conscious pain and suffering, immense physical pain, humiliation, fear, physical injuries, and death.

**WHEREFORE**, Plaintiff claims of Defendants Corrections Officer John Doe and Medical Provider John Doe and PrimeCare a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, together with punitive damages, delay damages, interest,

9

attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and the allowable costs of suit, and brings this action to recover the same.

## COUNT II

### MUNICIPAL LIABILITY
### *MONELL* – PURSUANT TO 42 U.S.C. § 1983
### PLAINTIFF v. DEFENDANT LEHIGH COUNTY

60. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

61. Defendant Lehigh County promulgated and maintained policies, customs, and practices, as pled at length above, which were the moving force that caused the violation of Mr. Wright's constitutional rights.

62. Defendant Lehigh County failed to adhere to and enforce adequate protocols for detecting, monitoring, and safeguarding inmates and detainees facing a substantial risk of serious harm, including required cell checks and rounds, intake and ongoing mental health screening, appropriate placement on and discontinuation of watch protocols, removal of dangerous items, communication of risk factors among staff and across shifts, and provision of adequate medical and mental health care.

63. Defendant Lehigh County maintained a custom and practice of inadequately staffing LCJ with qualified mental health professionals and of failing to ensure that corrections officers and medical staff shared critical information regarding an inmate's or detainee's known risk of suicide or self-harm.

64. Defendant Lehigh County failed to adequately train and supervise its corrections officers, medical staff, and mental health staff with respect to identifying, monitoring, and protecting inmates and detainees facing a substantial risk of serious harm, despite the obvious need for such training and supervision.

65. Defendant Lehigh County was on notice of the deficiencies in its policies, customs, and practices, including by reason of the prior in-custody deaths and lawsuits described above, yet failed to take corrective action.

66. Defendant Lehigh County was deliberately indifferent to the known or obvious consequences of its policies, customs, practices, and failures to train and supervise, namely that inmates and detainees facing a substantial risk of serious harm, including Mr. Wright, would be deprived of their constitutional rights and would suffer serious injury or death.

67. Had Defendant Lehigh County properly promulgated appropriate protocols, customs, and practices, and adequately trained and supervised its employees, Mr. Wright would have received appropriate care and supervision, and his death would have been prevented.

68. As a direct and proximate result of Defendant Lehigh County's policies, customs, practices, and failures to train and supervise, Mr. Wright suffered immense physical pain, humiliation, fear, physical injuries, and death. Moreover, Mr. Wright's family suffered mental anguish and the loss of his companionship, comfort, society, financial support, and guidance.

69. Plaintiff also makes a claim for such injuries, damages, and consequences resulting from the incident of which she has no present knowledge.

**WHEREFORE**, Plaintiff claims of Defendant Lehigh County a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, delay damages, interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and the allowable costs of suit, and brings this action to recover the same.

**COUNT III**

**MUNICIPAL/CORPORATE LIABILITY**
***MONELL* – PURSUANT TO 42 U.S.C. § 1983**
**PLAINTIFF v. DEFENDANT PRIMECARE MEDICAL, INC.**

70. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

71. Defendant PrimeCare, as a private corporation performing a traditional state function by providing medical and mental health care to inmates and detainees at LCJ, is subject to liability under 42 U.S.C. § 1983 under the same standards applicable to municipal entities.

11

72. Defendant PrimeCare promulgated and maintained policies, customs, and practices, as pled at length above, that were the moving force that caused the violation of Mr. Wright's constitutional rights.

73. Defendant PrimeCare failed to implement and enforce adequate protocols for providing timely and adequate medical and mental health screening, evaluation, treatment, monitoring, and follow-up care to inmates and detainees at LCJ who were at risk of suicide or self-harm.

74. Defendant PrimeCare maintained a custom and practice of providing inadequate mental health care to inmates and detainees at LCJ, including by failing to employ sufficient qualified mental health professionals, failing to develop and implement individualized treatment plans for inmates and detainees with known mental health conditions or suicide risk, and failing to ensure continuity of care.

75. Defendant PrimeCare failed to adequately train and supervise its medical and mental health staff with respect to identifying, monitoring, and treating inmates and detainees at risk of suicide or self-harm, despite the obvious need for such training and supervision.

76. Defendant PrimeCare was on notice of the deficiencies in its policies, customs, and practices, including by reason of the prior in-custody deaths and lawsuits described above, as well as its own institutional knowledge of suicide risk in custodial settings, yet failed to take corrective action.

77. Defendant PrimeCare was deliberately indifferent to the known or obvious consequences of its policies, customs, practices, and failures to train and supervise, namely that inmates and detainees at LCJ facing a substantial risk of serious harm, including Mr. Wright, would be deprived of their constitutional rights and would suffer serious injury or death.

78. Upon information and belief, PrimeCare's deficient policies, customs, and practices were driven in whole or in part by cost-saving measures that incentivized PrimeCare to provide the minimum level of care to inmates and detainees at LCJ, at the expense of their constitutional rights.

79. Had Defendant PrimeCare properly promulgated appropriate protocols, customs, and practices, and adequately trained and supervised its employees, Mr. Wright would have received appropriate medical and mental health care, and his death would have been prevented.

80. As a direct and proximate result of Defendant PrimeCare's policies, customs, practices, and failures to train and supervise, Mr. Wright suffered immense physical pain, humiliation, fear, physical injuries, and death. Moreover, Mr. Wright's family suffered mental anguish and the loss of his companionship, comfort, society, financial support, and guidance.

81. Plaintiff also makes a claim for such injuries, damages, and consequences resulting from the incident of which she has no present knowledge.

**WHEREFORE**, Plaintiff claims of Defendant PrimeCare Medical, Inc. a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, together with delay damages, interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and the allowable costs of suit, and brings this action to recover the same.

## COUNT IV

**PROFESSIONAL NEGLIGENCE – MEDICAL MALPRACTICE (PENNSYLVANIA LAW)**
**PLAINTIFF v. DEFENDANTS PRIMECARE MEDICAL, INC. AND MEDICAL PROVIDER JOHN DOE**

82. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

83. At all relevant times, Defendants PrimeCare and Medical Provider John Doe, by and through their physicians, nurses, mental health professionals, employees, and agents, undertook to render medical and mental health care to Mr. Wright and thereby entered into a healthcare provider–patient relationship with him.

84. Defendants PrimeCare and Medical Provider John Doe owed Mr. Wright a duty to possess and employ the degree of skill, knowledge, care, and diligence ordinarily possessed and

exercised by reasonably competent medical and mental health professionals under like circumstances.

85. Defendants PrimeCare and Medical Provider John Doe, by and through their employees and agents, breached and deviated from the applicable standard of care owed to Mr. Wright by failing to perform an adequate intake medical and mental health assessment; failing to recognize, document, and respond to his known risk of suicide or self-harm and his serious mental health needs; failing to order and implement appropriate suicide precautions, observation, and treatment; failing to prescribe, administer, and monitor appropriate medication; failing to provide timely and adequate mental health evaluation and treatment; and failing to ensure adequate communication, continuity, and follow-up of his care.

86. Defendant PrimeCare is vicariously liable for the negligent acts and omissions of its physicians, nurses, mental health professionals, employees, and agents, including Defendant Medical Provider John Doe, committed within the course and scope of their employment or agency, under the doctrines of respondeat superior and ostensible agency.

87. As a direct and proximate result of the negligence and carelessness of Defendants PrimeCare and Medical Provider John Doe, Mr. Wright suffered conscious pain and suffering, emotional distress, fear, physical injuries, and death, and his family suffered the losses described herein.

**WHEREFORE**, Plaintiff claims of Defendants PrimeCare Medical, Inc. and Medical Provider John Doe a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, together with delay damages, interest, and the allowable costs of suit, and brings this action to recover the same.

## COUNT V

### WRONGFUL DEATH (PENNSYLVANIA LAW)
### PLAINTIFF v. ALL DEFENDANTS

88. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

14

89. Plaintiff Ana Cabrera, individually and as Administrator of the Estate of Arturo Roberto Wright, deceased, brings this action on behalf of the beneficiaries under and by virtue of the Pennsylvania Wrongful Death Act, 42 Pa.C.S. § 8301, and the applicable Rules of Civil Procedure.

90. Arturo Roberto Wright was survived by a son, who is the beneficiary under the Wrongful Death Act.

91. As a result of the conduct of all Defendants, as set forth herein, Arturo Roberto Wright was caused grave injuries and death, resulting in the entitlement to damages by the beneficiaries under the Wrongful Death Act.

92. Plaintiff Ana Cabrera, individually and as Administrator of the Estate of Arturo Roberto Wright, deceased, claims all expenses recoverable under the Wrongful Death Act, including but not limited to damages for medical, funeral, and burial expenses and expenses of administration necessitated by reason of the injuries causing Mr. Wright's death.

93. On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for all services which the Decedent provided or could have been expected to provide in the future.

94. On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for all pecuniary loss suffered by the beneficiaries.

95. On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for all loss of comfort, society, companionship, guidance, and tutelage that the beneficiaries would have received from the Decedent but for his untimely death.

96. On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for the full measure of damages, including punitive damages, allowed under the Wrongful Death Act of Pennsylvania and the decisional law interpreting said Act.

**WHEREFORE**, Plaintiff demands damages, including punitive damages, against all Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars ($150,000) and in excess of local arbitration limits, exclusive of interest and costs.

15

## COUNT VI

### SURVIVAL ACTION (PENNSYLVANIA LAW)
### PLAINTIFF v. ALL DEFENDANTS

97. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

98. Plaintiff Ana Cabrera, as Administrator of the Estate of Arturo Roberto Wright, deceased, brings this Survival Action on behalf of the Estate of Arturo Roberto Wright under and by virtue of 42 Pa.C.S. § 8302, and the applicable Rules of Civil Procedure and the decisional law interpreting said Act.

99. As a result of the negligence and deliberate indifference of all Defendants as set forth herein, Arturo Roberto Wright was caused grave injuries and death, resulting in the entitlement to damages by his Estate under the Survival Act.

100. As a result of the death of Arturo Roberto Wright, his Estate has been deprived of the economic value of his life expectancy, and Plaintiff claims under the Survival Act damages for all pecuniary losses suffered by the Estate as a result of the Decedent's death, including all loss of income, earnings, retirement income, benefits, and Social Security income.

101. The Administrator further claims, under the Survival Act, the total amount that the Decedent would have earned in the future, minus the costs of personal maintenance.

102. The Administrator further claims, under the Survival Act, damages for the conscious pain and suffering endured by the Decedent prior to his death, including physical pain and suffering, and mental pain and suffering leading to his death.

103. The Administrator further claims, under the Survival Act, all damages, including punitive damages, recoverable pursuant to 42 Pa.C.S. § 8302, and the decisional law interpreting said Act.

**WHEREFORE**, Plaintiff demands damages, including punitive damages, against all Defendants, jointly and severally, in excess of one hundred and fifty thousand dollars ($150,000) and in excess of local arbitration limits, exclusive of interest and costs.

16

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to each Count and each Defendant.

Date:  July 2, 2026                                      Respectfully submitted,

/s/ Brian J. Zeiger
Brian J. Zeiger, Esquire (PA I.D. #87063)
/s/ Laura Zipin
Laura Zipin, Esquire (PA I.D. #324914)

Levin & Zeiger LLP
Two Penn Center
1500 JFK Boulevard, Suite 620
Philadelphia, PA 19102
 (215) 546-0340
zeiger@levinzeiger.com
zipin@levinzeigercom
*Counsel for Plaintiff*

17